# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GABRIEL SCHAAF,

              Petitioner,          :     Case No. 3:20-cv-090

   - vs -                              District Judge Thomas M. Rose
                                          Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,
  Chillicothe Correctional Institution,

                                     :

             Respondent.

## REPORT AND RECOMMENDATIONS

      This habeas corpus case, brought *pro se* by Petitioner Gabriel Schaaf, is before the Court for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 8), the Return of Writ (ECF No. 9), and Petitioner's Reply (ECF No. 14).

**Litigation History**

      On July 10, 2017, a Preble County Grand Jury indicted Petitioner on one count of tampering with evidence, one count of murder, and one count of aggravated murder in connection with the December 26, 2016, death of his adult son. (Indictment, State Court Record ECF No. 8, Ex. 1). A jury convicted Schaaf on all three counts and he was sentenced to twenty-five years to life imprisonment. The Ohio Twelfth District Court of Appeals affirmed the conviction. *State v. Schaaf,* 2019 Ohio 196 (Ohio App. 12th Dist. Jan. 22, 2019), appellate jurisdiction declined, 155 Ohio St. 3d 1439 (2019).

1

Schaaf then filed his Petition for Writ in this Court, pleading the following grounds for relief:

**Ground One:** Schaaf was deprived of a fair trial and due process by the prosecutor's misconduct.

**Supporting Facts:** The prosecutor committed misconduct and violated petitioner's right to a fair trial and due process of law by commenting of petitioner's pretrial silence and his invoking his right to remain silent.

**Ground Two:** The trial court violated petitioner's constitutional rights by allowing pretrial statements made in violation of *Miranda* rights.

**Supporting Facts:** The petitioner's rights against self incrimination and right to remain silent were violated by the state allowing the use of pretrial custodial interview statements made without *Miranda* warning.

**Ground Three**: The evidence is constitutionally insufficient to support petitioner's conviction for aggravated murder.

**Supporting Facts:** There is insufficient evidence to support petitioner's conviction for the offense of aggravated murder in this case, where several of the facts alleged in this case are wrong and not supported by the evidence.

(Petition, ECF No. 1, PageID 5, 7, 8)

# Analysis

### Ground One:  Prosecutorial Misconduct

In his First Ground for Relief, Schaaf claims he was deprived of a fair trial by the prosecutor's comment on his pre-trial silence and his invoking his right to remain silent.

Respondent asserts Ground One is procedurally defaulted because Schaaf's attorney made no contemporaneous objection to either instance of asserted misconduct (Return of Writ, ECF No. 9,

PageID 711.) Schaaf replies that although the court of appeals discussed procedural default, it proceeded to decide the relevant claims on the merits and thus the claimed procedural default was overlooked by the Twelfth District (Reply, ECF No. 14, PageID 764).

Schaaf raised his claims of prosecutorial misconduct as his First Assignment of Error on direct appeal and the Twelfth District decided it as follows:

> [*13] SCHAAF WAS DEPRIVED OF A FAIR TRIAL DUE TO THE PROSECUTION COMMENTING ON SCHAAF INVOKING HIS RIGHT TO REMAIN SILENT AND RIGHT TO COUNSEL.
>
> [*14] Schaaf argues that the state deprived him of a fair trial when the prosecutor, during voir dire, stated that there would be no trial if there was no dispute as to what occurred between Schaaf and Jonathon. Schaaf also argues that the state deprived him of a fair trial when a detective testified that Schaaf told the police he would not speak to them on the advice of counsel. Schaaf concedes that he did not object to either claimed instance of error and is limited to a review for plain error.
>
> [*15] Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002- Ohio 68, 759 N.E.2d 1240 (2002). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros,* 78 Ohio St.3d 426, 436, 1997-Ohio-204, 678 N.E.2d 891 (1997). This court should notice plain error with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice. *State v. Widmer,* 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 84.
>
> [*16] To demonstrate that the state deprived him of a fair trial, Schaaf must demonstrate that the prosecutor's comments or actions were improper and prejudicially affected his substantial rights. See *State v. Elmore*, 111 Ohio St. 3d 515, 2006-Ohio-6207, ¶ 62, 857 N.E.2d 547. In making such a determination, the focus is upon the fairness of the trial, not upon the culpability of the prosecutor. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. A finding of prosecutorial misconduct will not be grounds for reversal unless the defendant can establish that he has been denied a

fair trial because of the prosecutor's actions. See State v. Smith, 12th Dist. Warren No. CA2017-02-013, 2017-Ohio-7540, ¶ 29. During voir dire, the prosecutor stated:

> Does everyone understand that if everyone in this room agreed about what happened on December 26th, 2016, there wouldn't be a need for a trial? In other words, there likely will be a conflict of evidence in this case. Is there anyone who doesn't understand that?
>
> And is there anyone who for any reason does not feel that they could be part of that function of a trier of fact and separate what they think the truth is and what they think the lies are and reach a fair and impartial verdict?

[*17] These statements were appropriate and accurately relayed to jurors that facts are contested in every trial. The remarks appeared designed to prepare jurors for the unique task of resolving conflicts in evidence in rendering a verdict. The questions posed by the prosecutor were neutrally phrased and did not insinuate that only a guilty or dishonest individual would seek a trial.

[*18] Next, Schaaf argues that the prosecutor committed misconduct by eliciting testimony from a detective concerning Schaaf's right to remain silent. During direct examination, the prosecutor asked the detective what the status of the police investigation was prior to Schaaf's admission to involvement in the homicide. The detective's response explained the various reasons why law enforcement focused its effort on Schaaf as the primary suspect. Those reasons included that the killer had draped a towel over the body, indicating a personal relationship with Jonathon, that the blood on scene appeared coagulated and inconsistent with Schaaf's timeline, Schaaf's demeanor, his failure to contact law enforcement for updates on the investigation for over two weeks following the death, and Schaaf's cancellation of a police interview. With respect to this cancellation, the detective stated that Schaaf called and left a voice message stating that he had talked to his attorney, who advised him not to speak to the police.

[*19] The use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. State v. Leach, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, syllabus. In Leach, the Ohio Supreme Court held, in limited circumstances, testimony concerning pre-arrest silence is appropriate if it is introduced as evidence of the "course of the investigation." Id. at ¶ 32. The court concluded that while it

was improper to admit the investigator's direct testimony regarding the defendant's decision to exercise his right to silence through the invocation of counsel over the telephone, the investigator's testimony regarding the defendant's failure to keep his scheduled appointment with the police was "legitimate." *Id.*

[*20] In this case, detective's testimony on direct examination concerning Schaaf cancelling an appointment based on his attorney's advice not to speak with police was the state's use of pre-arrest silence as substantive evidence of appellant's guilt and was error. [footnote: To be clear, there is no indication that the prosecutor intended to elicit this testimony. The detective provided a lengthy response to a general question.] However, assuming a Fifth Amendment violation occurred, this court would not find that Schaaf was deprived of a fair trial. As will be addressed below, the murder verdicts were supported by substantial evidence of Schaaf's guilt. Compare *Leach* at ¶ 29 (noting that the defendant was convicted on no physical evidence and only on the credibility of the state's complaining witnesses). Moreover, any error would be harmless because jurors were aware that Schaaf later voluntarily agreed to speak with police and provided them with his version of events wherein he set forth his claim of self-defense. This court overrules Schaaf's first assignment of error.

*Schaaf*, 2019-Ohio-196.

The procedural default doctrine in habeas corpus, relief on by Respondent, is described by the Supreme Court as follows:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal

habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster*

> *County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Applying the *Maupin* analysis, the Court finds first that Ohio has a relevant procedural rule, requiring a contemporaneous objection to trial court error: parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998).

In this case the Twelfth District enforced that rule by reviewing Schaaf's First Assignment of Error under the plain error standard. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default such as a failure to make a contemporaneous objection. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Furthermore, the Sixth Circuit has repeatedly held that Ohio's contemporaneous objection

rule is an adequate and independent basis of state court decision.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012),*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

Although a procedural default can be excused by an adequate showing of cause and prejudice or actual innocence, Schaaf proffers no excusing cause, presumably because he believes the Twelfth District excused his procedural default by engaging in plain error review.  But that is not the law, as shown above.  Schaaf's First Ground for Relief should be dismissed as procedurally defaulted.

In the alternative, the First Ground for Relief is without merit.  Regarding the first component of the claim – the prosecutor's comment to the venire about why there was to be a trial – is an accurate statement of the law and completely appropriate under the circumstances.

As to the second component – the detective's testimony that Schaaf had declined to be interviewed on advice of counsel – the Twelfth District found that it amounted to use of Schaaf's pre-arrest silence as substantive proof of his guilt and its admission was therefore error, although it was harmless error.  *Schaaf*, 2019-Ohio-196, ¶ 20.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is

contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Respondent asserts that the correct Supreme Court law to apply to this finding of harmless error is that adopted in *Brecht v. Abrahamson*, 507 U.S. 619 (1993): constitutional error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht,* adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946); *Williams v. Bauman*, 759 F.3d 630, 637 (6th Cir. 2014). This standard calls for reversal when the reviewing court lacks a "fair assurance" that the outcome of a trial was not affected by evidentiary error. *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004). *Brecht* applies post-AEDPA "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705." *Fry v. Pliler*, 551 U.S. 112 (2007).

Petitioner agrees that *Brecht* is the correct standard to apply (Reply, ECF No. 14, PageID 765). However, he argues that it was applied unreasonably. *Id.* The Magistrate Judge disagrees. As the Twelfth District points out, this fact of declining an interview on advice of an attorney was not elicited by the prosecutor, but given by the detective as part of a long response to a very general question[1]. The jury learned as part of the same answer that Schaaf had later agreed to an interview. And there was very substantial additional evidence of Schaaf's guilt. It is very unlikely that the jury's verdict was affected by this statement.

In sum, Petitioner's First Ground for Relief is procedurally defaulted and also without

---

[1] The question was: "And what are your thoughts as the lead investigator on this case at that time?" The question calls for a narrative response and could possibly have been subject to an objection on that basis.

merit.  It should be dismissed on both grounds.

**Ground Two:  Admission of Statements Taken in Violation of *Miranda v. Arizona***

In his Second Ground for Relief, Schaaf asserts the trial court committed constitutional error by admitting statements he made without compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966).  Respondent asserts the Second Ground for Relief is without merit (Return, ECF No. 9, PageID 727).  Schaaf responds that the failure of the trial court to suppress statements he made, both before and after he was given *Miranda* warnings, was contrary to or an unreasonable application of Supreme Court precedent, permitting relief under 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts, permitting relief under 28 U.S.C. § 2254(d)(2)(Reply, ECF No. 14, PageID 768).

Schaaf presented this claim as his second Assignment of Error on direct appeal and the Twelfth District decided it as follows:

> [*22]  THE  TRIAL  COURT  ERRED  IN  OVERRULING SCHAAF'S  MOTION  TO  SUPPRESS  AND  ALLOWING INCULPATORY STATEMENTS TO BE ADMITTED DESPITE SCHAAF INVOKING HIS RIGHT TO COUNSEL AND NOT BEING ADMINISTERED MIRANDA WARNINGS.
>
> [*23]  Schaaf argues that the trial court should have suppressed both the "lawn mower" interview and his subsequent interview at the police station.  Schaaf contends that police should not have questioned him during the lawn mower interview without first advising him of his Miranda rights because he was in "custody" during the interview as police were "badgering" him during questioning. Schaaf also contends that police should not have questioned him at all because he had earlier invoked his right to remain silent. Schaaf argues that his statements during the interview at the police station are fruit of the poisonous tree.
> [*24]  This court's review of a trial court's denial of a motion to suppress evidence presents a mixed question of law and fact. *State*

*v. Cochran,* 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id.* at ¶ 12.

[*25] The state may not use a defendant's statements, whether exculpatory or inculpatory, stemming from custodial interrogation, unless the state demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *State v. Durham,* 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 15, 999 N.E.2d 1233. However, the police are not required to administer the warnings set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694 (1966), to every individual they question. *State v. Byrne,* 12th Dist. Butler Nos. CA2007-11-268 and CA2007-11-269, 2008-Ohio-4311, ¶ 10, citing *Biros,* 78 Ohio St.3d at 440; *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L. Ed. 2d 714 (1977). Rather, the "duty to advise a suspect of constitutional rights pursuant to Miranda is only required when the police subject a person to a custodial interrogation." *State v. Fridley,* 12th Dist. Clermont No. CA2016-05-030, 2017-Ohio-4368, ¶ 35, 93 N.E.3d 10.

[*26] "*Miranda* defines custodial interrogation as any 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of any action in any significant way.'" (Emphasis deleted.) *State v. Matthews,* 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 10, quoting *Miranda,* 384 U.S. at 444. "In determining whether an individual was in custody during an interrogation by the police, the court must examine the totality of the circumstances surrounding the interrogation." *State v. Gomez,* 12th Dist. Butler No. CA2017-03-035, 2017-Ohio-8681, ¶ 20, citing *State v. Robinson,* 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 12, 48 N.E.3d 109. The determination of whether a custodial interrogation has occurred "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Coleman,* 12th Dist. Butler No. CA2001-10-241, 2002-Ohio-2068, 2002 Ohio App. LEXIS 1985, *11-12 (Apr. 29. 2002), citing *Stansbury v. California,* 511 U.S. 318, 323-324, 114 S.Ct. 1526, 128 L. Ed. 2d 293 (1994).

Therefore, "[i]n judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'" *State v. Gumm*, 73 Ohio St.3d 413, 429, 1995- Ohio 24, 653 N.E.2d 253 (1995), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L. Ed. 2d 497 (1980).

[*27] At the suppression hearing, a detective testified that he and his partner drove to Schaaf's home in an unmarked police vehicle. Both detectives wore plain clothes with tactical vests. They observed Schaaf in his yard cutting the grass on a riding lawn mower.

[*28] The detectives motioned for Schaaf to come over to them. Schaaf did not immediately drive over but made a few more passes with the mower. Eventually, he drove over to the detectives, turned the mower engine off, and sat on it while they asked him questions.

[*29] The detectives stood about 15 feet from Schaaf while questioning him. The interview lasted around 50 minutes. Audio of the interview demonstrates that the detectives did not threaten Schaaf nor did Schaaf sound confused or disoriented. Schaaf was not placed into handcuffs until the interview was complete and after he had made inculpatory statements.

[*30] This court finds that the trial court's determination that Schaaf was not in police custody during the lawn mower interview was supported by competent and credible evidence. Consequently, this court finds that police were not required to provide Schaaf with Miranda warnings before the lawn mower interview commenced. Schaaf's statements were voluntary and admissible.

[*31] Next, Schaaf argues that the detectives should not have conducted the lawn mower interview because he had earlier invoked his right to counsel. The United States Supreme Court has held that "[a]n accused * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. at 484-485. However, the *Edwards* rule applies only if the accused invokes his right to an attorney while in custody. *Coleman*, 2002- Ohio 2068, 2002 Ohio App. LEXIS 1985 at *10, citing *United States v. Harris*, 961 F. Supp. 1127, 1135 (S.D. Ohio 1997).

12

[*32] Schaaf was not in police custody in February 2017 when he informed detectives by phone that he had been advised against speaking to them by an attorney. For the reasons just discussed, Schaaf was also not in police custody during the lawn mower interview. Accordingly, Schaaf had no Fifth Amendment right to counsel during the lawn mower interview that the detectives could have violated by questioning him. Schaaf was free to ignore the advice of his attorney and speak to police. Based on the foregoing, the trial court also did not err in overruling Schaaf's motion to suppress his statements at the police station. Consequently, this court overrules Schaaf's second assignment of error.

*Schaaf*, 2019-Ohio-196.

According to the Sixth Circuit,

The *Miranda* Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444. A suspect is "in custody" for purposes of receiving *Miranda* protection if there has been a "formal arrest or restraint on freedom of movement." *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California,* 511 U.S. 318, 323 (1994) (per curiam). *Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Mathiason,* 429 U.S. at 495). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984).

*Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003). Even the fact that a person is already in prison, is questioned in private, and is questioned about events in the outside world does not *per se* amount to custodial questioning. *Howes v. Fields*, 565 U.S. 499 (2012).

Schaaf does not dispute the historical factual findings that the so-called lawn mower interview took place at his home in his own yard after he had made several passes over the lawn

with the mower after the detectives appeared. Although they had on tactical vests and were armed, Schaaf does not claim that they drew their weapons. He does not assert that he attempted to leave and was prevented from doing so. Under these circumstances, a reasonable person would not have believed that he was in custody or at least the determination of the Ohio courts to that effect is not an unreasonable determination of the facts in light of the evidence that was before them.

Schaaf's second claim under this Ground for Relief is that his statement at the police station after he had been given *Miranda* warnings should have been suppressed because he had previously invoked his right to counsel, relying on *Edwards v. Arizona*, 451 U.S. at 484-485. However, at the Twelfth District pointed out, "the *Edwards* rule applies only if the accused invokes his right to an attorney while in custody." *Schaaf*, 2019-Ohio-196, ¶ 31 citing *State v. Coleman*, 2002-Ohio-2068, (12th Dist. Apr. 29, 2002), citing this Court's decision in *United States v. Harris*, 961 F. Supp. 1127, 1135 (S.D. Ohio 1997). It is very clear that Schaaf was not in custody when he said he would not talk on advice of counsel in February, 2017.

The Twelfth District's decision on the Second Assignment of Error is neither contrary to nor an objectively unreasonable application of *Miranda* and its Supreme County progeny. Nor is it an unreasonable determination of the facts on the basis of the evidence before the state courts. Schaaf's Second Ground for Relief should therefore be dismissed on the merits.

**Ground Three: Insufficient Evidence for Aggravated Murder Conviction**

In his Third Ground for Relief, Schaaf claims his conviction for aggravated murder is not supported by constitutionally sufficient evidence. Respondent defends this Ground for Reloief on the merits, contending the Twelfth District's decision is entitled to deference under relevant

14

Supreme Court precedent (Return, ECF No. 9, PageID 742, et seq.). In his Reply, Schaaf raises

both claims made on direct appeal, to wit, that there was insufficient evidence of prior calculation

and design and also insufficient evidence to rebut his self-defense claim (ECF No. 14, PageID 777,

et seq.).

In his direct appeal, Schaaf argued this claim as his Third Assignment of Error which the

Twelfth District decided as follows:

> [*34] THE EVIDENCE DID NOT SUPPORT A CONVICTION
> FOR AGGRAVATED MURDER.
>
> [*35] Schaaf argues that his convictions for murder and aggravated
> murder were supported by insufficient evidence and were against
> the manifest weight of the evidence. The concept of legal
> sufficiency of the evidence refers to whether the conviction can be
> supported as a matter of law. *State v. Everitt,* 12th Dist. Warren No.
> CA2002-07-070, 2003-Ohio-2554, ¶ 10. In reviewing the
> sufficiency of the evidence, an appellate court must examine the
> evidence admitted at trial to determine whether such evidence, if
> believed, would convince the average mind of the defendant's guilt
> beyond a reasonable doubt. The relevant inquiry is whether, after
> reviewing the evidence in a light most favorable to the prosecution,
> any rational trier of fact would have found all the essential elements
> of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61
> Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the
> syllabus.
>
> [*36] To determine whether a conviction is against the manifest
> weight of the evidence, a reviewing court must look at the entire
> record, weigh the evidence and all reasonable inferences, consider
> the credibility of the witnesses, and determine whether in resolving
> the conflicts in the evidence, the trier of fact clearly lost its way and
> created such a manifest miscarriage of justice that the conviction
> must be reversed and a new trial ordered. *State v. Bradbury*, 12th
> Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An
> appellate court will overturn a conviction due to the manifest weight
> of the evidence only in extraordinary circumstances when the
> evidence presented at trial weighs heavily in favor of acquittal. *Id.*
> at ¶ 18.
>
> [*37] The aggravated murder count required the state to prove that
> Schaaf purposely caused Jonathon's death "with prior calculation

and design." R.C. 2903.01(A). Schaaf argues that there was insufficient evidence to support this element because there was no evidence that he planned Jonathon's homicide. Instead, the evidence reflected a mutual combat between father and son which culminated in Schaaf delivering fatal blows in self-defense.

[*38]  There is no bright-line test to determine whether prior calculation and design are present; each case must be decided on a case-by-case basis. *State v. Adams,* 12th Dist. Butler No. CA2009-11-293, 2011-Ohio-536, ¶ 23.

> Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.

*State v. Braden,* 98 Ohio St.3d 354, 2003-Ohio-1325, ¶ 61, 785 N.E.2d 439.

[*39]  The Ohio Supreme Court has held that the state provided sufficient evidence of prior calculation and design where, during a robbery, the defendant placed a gun to the forehead of a cooperative and unresisting store clerk, who was standing with his hands above his head, and pulled the trigger, instantly killing the clerk. *State v. Goodwin,* 84 Ohio St.3d 331, 344, 1999- Ohio 356, 703 N.E.2d 1251 (1999). Following the murder, the defendant did not flee the store. Instead, the defendant then placed the gun to the forehead of another store clerk and ordered him to go to the store safe. *Id.*

[*40]  The court explained that the defendant's decision to place a gun against the victim's forehead required thought. That the defendant took some additional time to decide to pull the trigger showed calculation. The court held that these facts, coupled with the defendant's actions following the killing, demonstrated that the murder was in furtherance of the defendant's robbery scheme and was not a spur-of-the-moment accidental shooting. *Id.*

[*41]  The Ohio Supreme Court also found prior calculation and design where the defendant was a participant in a planned robbery at an apartment. *State v. Jackson,* 92 Ohio St.3d 436, 2001- Ohio 1266, 751 N.E.2d 946 (2001). During the robbery, the defendant struck a victim with a handgun, placed a pillow behind her head and threatened to kill her. *Id.* at 436. The victim begged to be spared,

and the defendant did not kill her. Next, the defendant ordered two other victims to lie on the floor next to one another. The defendant then told his accomplice that these prone victims knew who he was, and he would have to kill them. *Id*. One at a time, the defendant placed a pillow against the head of the victims, hesitated, then pulled the trigger, killing both. *Id*. at 436-437.

[*42] The court noted that the defendant's actions again did not demonstrate a spur-of-the-moment decision to kill. Instead, the evidence indicated that the defendant decided to kill the defendants [sic] execution-style after he realized they recognized him, and the defendant took time to retrieve a pillow from the couch to effectuate his calculated plan. *Id*. at 442.

[*43] Schaaf's recorded statements to police establish that he struck Jonathon several times on the head with a door dowel. This action rendered Jonathon unconscious, breathing, and face down on the ground. Schaaf was aware that Jonathon was still alive but also knew that he was "not okay." Schaaf then retrieved a hatchet. He next swung the hatchet multiple times at the back of Jonathon's neck and shoulders. The coroner's testimony and photographs introduced into evidence graphically demonstrated that the blows were delivered with such force that Jonathon was essentially decapitated. Schaaf admitted in his interview at the police station that his purpose in using the hatchet was to make sure that Jonathon was "finished off," ostensibly so that "he wouldn't suffer."

[*44] This court concludes that the evidence in this case, when viewed in a light most favorable to the prosecution, was sufficient to allow the jury to find prior calculation and design. Reasonable jurors could find that Schaaf had time and opportunity to plan Jonathon's homicide between rendering him unconscious with the dowel and the ultimate act of killing. This is demonstrated by Schaaf observing Jonathon's failing medical state following the dowel attack, his subsequent retrieval of a specific weapon, and the decision to employ massive force and repeated blows to ensure that Jonathon was, in Schaaf's words, "finished off." Schaaf's description of using the hatchet for the alleged reason of ending Jonathon's suffering does not indicate a spur-of-the-moment killing during a mutual combat scenario but rather a calculated choice.

[*45] Next, Schaaf argues that the jurors lost their way in finding that he did not act in self-defense. Self-defense, in a deadly force scenario, is an affirmative defense that requires a defendant to prove three elements by a preponderance of the evidence: "(1) the defendant was not at fault in creating the violent situation, (2) the

17

defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger." *State v. Goff*, 128 Ohio St.3d 169, 176, 2010-Ohio-6317, ¶ 36, 942 N.E.2d 1075, citing *State v. Thomas,* 77 Ohio St.3d 323, 326, 1997- Ohio 269, 673 N.E.2d 1339 (1997).

[*46] Upon review, this court does not find that the jury lost its way in finding that Schaaf did not meet his burden on self-defense. Schaaf did not testify or otherwise present any evidence. But a self-defense case was nonetheless presented to jurors through the lawn mower interview and his subsequent statements at the police station. Jurors were free to find Schaaf not credible for a variety of reasons, including the absence of any self-defense type injuries on his body, his failure to contact police immediately after the homicide, his casual demeanor contacting 9-1-1 and speaking to a first-responding officer after reporting his son's death, and his deliberate deception during the ensuing police investigation. Consequently, Schaaf's murder convictions were supported by sufficient evidence and were not against the manifest weight of the evidence and this court overrules the third assignment of error.

*Schaaf*, 2019-Ohio-196.

**Applicable Law**

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

> reasonable doubt . . . .  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable inferences
> from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency challenge

should be assessed against the elements of the crime, not against the elements set forth in an

erroneous jury instruction.  *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed.

2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to groups
> who might view facts differently than we would. First, as in all
> sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold
> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable
> doubt, on habeas review, we must still defer to the state appellate

> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

In contrast to a sufficiency of the evidence claim, an assertion that a verdict is against the manifest weight of the evidence does not state a claim arising under the United States Constitution. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1

(2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). A habeas court cannot, therefore, consider a manifest weight claim.

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Supreme Court of Ohio reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence. It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, (1982), *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be

> exercised only in the exceptional case in which the evidence weighs
> heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited

approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest

weight of the evidence claim:

> In considering the claim that the conviction was against the manifest
> weight of the evidence, the test is much broader. The court,
> reviewing the entire record, weighs the evidence and all reasonable
> inferences, considers the credibility of the witnesses and determines
> whether in resolving conflicts in the evidence, the jury clearly lost
> its way and created such a manifest miscarriage of justice that the
> conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus. The consequences of the distinction are important

for a criminal defendant. The State may retry a case reversed on the manifest weight of the

evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double

Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

In presenting his Third Assignment of Error to the Twelfth District, Schaaf made both

insufficiency and manifest weight arguments. (Appellant's Brief, State Court Record , ECF No.

8, PageID 63-66). In deciding the Third Assignment of Error, the Twelfth District appears to have

applied the insufficiency of the evidence standard to the prior calculation and design element and

the manifest weight standard to the self-defense argument. Compare *Schaaf*, 2019-Ohio-196, ¶ 37

& 44 (using sufficiency language) with ¶ 45 (using manifest weight – the jury lost its way –

language).

Because the manifest weight claim is not cognizable in habeas corpus, this Report will

analyze the Third Ground for Relief only as it presents an insufficient evidence claim.

**Prior Calculation and Design**

A conviction for aggravated murder in Ohio requires proof that the defendant acted with prior calculation and design. Ohio Revised Code § 2903.01(A). Schaaf claims the State provided insufficient evidence of this element. State law establishes the elements of a particular crime and then the Fourteenth Amendment provides that each such element must be proved beyond a reasonable doubt. *Winship, supra*.

As the Twelfth District's decision explains, the Supreme Court of Ohio has found sufficient evidence of prior calculation and design when the amount of time involved in making the decision to kill is quite short. *Schaaf*, 2019-Ohio-196, ¶¶ 39-42. Then at ¶ 43 it details the facts supporting its conclusion that there was sufficient calculation and design: Schaaf beat Jonathon into unconsciousness with a dowel, then "retrieved" a hatchet and killed him with it, so he wouldn't suffer.

In contrast, Schaaf claims there was no evidence he "planned" a murder (Reply, ECF No. 14, PageID 777). He gives the narrative that "His son then grabbed a riffle and pointed it at him, but Petitioner got the gun from his son, then fought him off with a stick, and struck his son with a hatchet." *Id.* He ignores the factual finding of the Twelfth District that he "retrieved" the hatchet while Jonathon was still alive, findings based on his own recorded statements to the police. Those factual findings are presumed to be correct and Schaaf has not rebutted them by clear and convincing evidence. 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

The Twelfth District's decision that there was sufficient evidence from which a jury could have found prior calculation and design as that element of aggravated murder is defined in Ohio law is not

an unreasonable application of *Jackson*.

**Self Defense**

The Twelfth District held that self-defense is, in Ohio, an affirmative defense

> that requires a defendant to prove three elements by a preponderance of the evidence: "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger."

*Schaaf*, 119-Ohio-196 at ¶ 45, quoting *State v. Goff*, 128 Ohio St.3d 169, 176, 2010-Ohio-6317, ¶

36.  Schaaf explicitly adopts this definition of the defense[2] (Reply, ECF No. 14, PageID 778).

A defendant claiming self defense has both the burden of production and the burden of

proof by a preponderance.  Although Schaaf did not testify, the trial court allowed him to argue

self defense on the basis of his statements to the police and gave the jury a self-defense instruction.

Implicitly that is a holding that the jury could have acquitted on the basis of self-defense if it

believed those statements and construed what happened as Schaaf's counsel had argued.  Clearly

they did not.

Schaaf's insufficiency of the evidence claim as it relates to self-defense amounts to a claim

that the State submitted insufficient evidence to overcome or rebut his prima facie self-defense

claim.  But the jury could reasonably have concluded from the evidence they heard that Schaaf

had already extricated himself from the life-threatening struggle with his son when he left to

retrieve the hatchet.  Because he had beaten his son unconscious, he no longer had a bona fide

belief that he was in imminent danger of death or that he could have safely retreated.  The fact that

---

[2] Schaaf repeats the elements from *Goff* as accurate without citing that case.

one has used potentially deadly force to end a life-threatening struggle does not provide an excuse for retrieving a hatchet to finish the aggressor off. Even if the jury believed Schaaf's story that he killed his son to prevent his further suffering, it was not required to find him not guilty. Mercy killing is still murder.

**Conclusion**

On the basis of the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 21, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.