# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GABRIEL SCHAAF,

        Petitioner,    :    Case No. 3:20-cv-090

  - vs -                    District Judge Thomas M. Rose
                            Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,
  Chillicothe Correctional Institution,

                                  :
        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Gabriel Schaaf, is before the Magistrate Judge on recommittal by District Judge Rose (ECF No. 19) to consider Petitioner's Objections (ECF No. 18) to the original Report and Recommendations in this case (the "Report," ECF No. 15).

Schaaf pleaded the following grounds for relief:

> **Ground One:** Schaaf was deprived of a fair trial and due process by the prosecutor's misconduct.
>
> **Supporting Facts:** The prosecutor committed misconduct and violated petitioner's right to a fair trial and due process of law by commenting of petitioner's pretrial silence and his invoking his right to remain silent.
>
> **Ground Two:** The trial court violated petitioner's constitutional rights by allowing pretrial statements made in violation of *Miranda* rights.
>
> **Supporting Facts:** The petitioner's rights against self incrimination and right to remain silent were violated by the state allowing the use

1

>of pretrial custodial interview statements made without *Miranda* warning.
>
>**Ground Three**: The evidence is constitutionally insufficient to support petitioner's conviction for aggravated murder.
>
>**Supporting Facts:** There is insufficient evidence to support petitioner's conviction for the offense of aggravated murder in this case, where several of the facts alleged in this case are wrong and not supported by the evidence.

(Petition, ECF No. 1, PageID 5, 7, 8.)

The Report recommended that Ground One, prosecutorial misconduct, be dismissed as procedurally defaulted or, alternatively, on the merits (ECF No. 15, PageID 790-92). Schaaf makes no objection to either of these two conclusions. The Report likewise recommended that Ground Three, insufficient evidence, be dismissed on the merits. *Id.* at PageID 796-807. Schaaf raises no objections related to Ground Three. The Court may accordingly adopt the Report as to Grounds One and Three without further analysis.

Petitioner reserves his Objections for Ground Two, failure to suppress his statements to the police which were used to incriminate him. The balance of this Supplemental Report analyzes those Objections.

## Analysis

**Ground Two: Admission of Statements Taken in Violation of *Miranda v. Arizona***

In his Second Ground for Relief, Schaaf asserts the trial court committed constitutional error by admitting statements he made without compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966). Respondent defended Ground Two on the merits (Return, ECF No. 9, PageID 727). The

2

Report recommends dismissing Ground Two on the merits, concluding that the Ohio Twelfth District Court of Appeals decision on this claim, presented as the Second Assignment of Error on direct appeal, was neither an unreasonable application of relevant Supreme Court precedent (28 U.S.C. § 2254(d)(1)) nor based on an unreasonable determination facts in light of the evidence in the state court record (28 U.S.C. § 2254(d)(2))(ECF No. 15, PageID 796).

Petitioner divides his Objections into asserted factual errors (ECF No. 18, PageID 811-12) and legal errors. *Id.* at PageID 812-18.  This Supplemental Report response to the Objections in the order they are made, but some of the asserted legal errors are dependent on findings of fact.  The appropriate standard to apply to evaluating the Objections may be different depending on whether they challenge a state court finding of fact or a state court legal conclusion.  A habeas petitioner must overcome state court findings of fact by clear and convincing evidence in the state court record.  28 U.S.C. § 2254(e); *Cullen v. Pinholster*, 563 U.S. 170 (2011).  State court legal conclusions are entitled to deference under Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") unless they are contrary to or an objectively unreasonable application of clearly established federal law as announced in holdings of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Virginia v. LeBlanc,* 582 U.S. ___, 198 L. Ed. 2d 186 (2017); *Woods v. Donald*, 575 U.S. 312 (2015); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  Only holdings of the Supreme Court, not dicta in its opinions, can warrant habeas corpus relief. *Bryan v. Bobby*, 843 F.3d 1099 (6th Cir. 2016), citing *White v. Woodall*, 572 U.S. 415 (2014).

**Petitioner's Factual Objections**

Schaaf's first objection is to a finding of fact made by the court of appeals (Objections, ECF No. 18, PageID 811). In deciding the case, the Twelfth District Court of Appeals wrote:

> [*28] The detectives motioned for Schaaf to come over to them. Schaaf did not immediately drive over but made a few more passes with the mower. Eventually, he drove over to the detectives, turned the mower engine off, and sat on it while they asked him questions.

*State v. Schaaf,* 2019-Ohio-196 (Ohio App. 12th Dist. Jan. 22, 2019). The Report accepted the findings of fact made in this paragraph because Schaaf had not contested them:

> Schaaf does not dispute the historical factual findings that the so-called lawn mower interview took place at his home in his own yard after he had made several passes over the lawn with the mower after the detectives appeared. Although they had on tactical vests and were armed, Schaaf does not claim that they drew their weapons. He does not assert that he attempted to leave and was prevented from doing so. Under these circumstances, a reasonable person would not have believed that he was in custody or at least the determination of the Ohio courts to that effect is not an unreasonable determination of the facts in light of the evidence that was before them.

(Report, ECF No. 15, PageID 795-96).

Schaaf now argues:

> However, the appellate court, and subsequently Magistrate Judge Merz, got the sequence of this event out of order. Schaaf only drove over to the detectives after they motioned to him, and then he came straight to them. (P. ID 483) This fact was not fully presented to the trial judge, during the motion to suppress, but during the trial.

(Objections, ECF No. 18, PageID 811). Schaaf does not point to any place in his Reply (ECF No. 14) where he contested these factual findings. He instead cites to a page of the trial transcript where the prosecutor is examining Detective Dean Miller about his efforts to interview Schaaf. Miller testified:

4

> The following day, on June the 8th, we decided rather than to call him to ask him again to come in, we went to his house. Sole intent of going to his house that day was to confront him with the inconsistencies, confront him with our beliefs of what we thought happened. We did that and arrived that afternoon.
>
> Q. All right. So you showed up at 3994 Sonora?
>
> A. We did.
>
> Q. About what time of day?
>
> A. I'm guessing sometime early afternoon.  2:00, maybe, 3. I'm not real sure to be honest with you.
>
> Q. Was the Defendant home?
>
> A. He was. He was mowing grass in the back yard on a riding lawn mower.
>
> Q. What happened after he realized that you were standing in his back yard?
>
> A. Detective Blevins and I walked to the end of the concrete driveway to where it joined the yard. Mr. Schaaf was, like I said, on his riding lawn mower. He was probably, I don't know, 25 yards across the yard from us. As I recall, he kind of turned, looked at us, made eye contact, went back, kept on mowing. He made eye contact with us again.  Detective Blevins kind of motioned for him to come over to us and he did. He drove across the yard and came to where we were at.

(Trial Transcript, State Court Record ECF No. 8-1, PageID 482-83.)

The testimony of Detective Miller supports the factual finding for which Petitioner contends:  Schaaf did not stop mowing the grass and approach the officers, even though he had made eye contact with them, until one of them motioned him to come to them.  This behavior on Schaaf's part is consistent with other avoidance behavior to which Detective Miller testified. Schaff had told them to come interview him on his job, but they found out that he had been terminated from the job.  *Id.* at PageID 482.  When they called him about that, he begged off

5

talking to them by claiming he was sick. *Id.* He tried to avoid a face-to-face interview by asking them to interview him over the phone. *Id.* at PageID 481. Their desire to interview Schaaf was based on their firm conviction that Schaaf was responsible for the killing of his son, based on his behavior of never calling them to ask about the investigation. *Id.* at PageID 480.

Petitioner's second factual objection is:

> When Schaaf invoked his right to not speak, it was in connection to his right to have his attorney present during questioning. And this was in responce [sic] to formal questioning requested by the police. (P. ID 481) This was presented slightly differently during motion to suppress [sic]. (P. ID 217-18).

(Objections, ECF No. 18, PageID 811). Once again, the first transcript reference here is to Detective Miller's testimony at trial. At no point in the testimony transcribed at PageID 481 does Miller say anything about Schaaf invoking his right not to speak. Schaaf here is trying to replace the testimony at the suppression hearing with later testimony at trial, but his Second Assignment of Error, on which the Twelfth District was ruling at the contested portion of their decision, was directed to suppression hearing testimony. *Schaaf,* 2019-Ohio-196, ¶ 27.

Schaaf's third factual objection is that when he canceled an appointment with the detectives, he told them to call his attorney and this is not reflected in the Report (ECF No. 18, PageID 811). But neither the Twelfth District nor the Report made a factual finding to the contrary. The testimony of Detective Miller supports a finding that Schaaf left a voicemail message for the detectives saying that, on advice of an attorney, he was not going to come into the station to talk to them and that they should arrange a meeting with him and his attorney, leaving a couple of phone numbers (Trial Transcript, State Court Record 8-1, PageID 481).

Schaaf's fourth factual error objection is that there is no record of any assertion by police that they ever tried to call Schaaf's attorney (ECF No. 18, PageID 811). So far as the Magistrate

6

Judge is aware, that is a correct assertion of fact.

Schaaf's fifth factual error omission is that "All of these facts take place after an initial questioning, where Schaaf was Mirandized." (Objections, ECF No. 18, PageID 811, citing Motion Hearing Transcript, State Court Record ECF No. 8-1, PageID 211). Nothing at the cited transcript page says anything about *Miranda*.

Nothing in Schaaf's asserted factual errors shows that any factual conclusion by the Twelfth District, or in the Report which accepted those findings, is clearly erroneous; they merely point to additional facts which could properly have been found. As to the materiality of those facts, Schaaf argues that the detectives should have understood his voicemail as "an invitation to set up an appointment with Schaaf and his attorney together for formal questioning." (Objections, ECF No. 18, PageID 812).

The Magistrate Judge agrees with Petitioner that this would have been a reasonable interpretation of the voicemail and there is no evidence of record that the detectives accepted that invitation. Instead, they went to Schaaf's home and conducted the "lawn mower" interview.

**Petitioner's Legal Objections**

Petitioner's first legal objection is to the Twelfth District's conclusion that Schaaf was not in custody during the lawn mower interview (Objections, ECF No. 18, PageID 812). The Report deferred to this conclusion (ECF No. 15, PageID 795-96). Schaaf asserts this was an unreasonable application of a myriad of Supreme Court precedents (Objections, ECF No. 18, relying on *Miranda v. Arizona*, 384 U.S. 436 (1966); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)[1]; and

---

[1] Cited by Schaaf as appearing at 466 U.S. 544.

7

*Collins v. Virginia,* 138 S.Ct. 1663 (2018).

The requirement to provide *Miranda* warnings depends on whether the person being questioned is in custody.

> The *Miranda* Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444. A suspect is "in custody" for purposes of receiving *Miranda* protection if there has been a "formal arrest or restraint on freedom of movement." *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California,* 511 U.S. 318, 323 (1994) (per curiam). *Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Mathiason,* 429 U.S. at 495). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984).

*Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003). Petitioner does not contend that he was in custody during the lawn mower interview, but rather that the circumstances of the interview were sufficiently similar to custody that they are equivalent for *Miranda* purposes. He emphasizes that the detectives were armed and wore tactical vests, that the interview took place on his private property in which he had protectible Fourth Amendment interests, and that the detectives showed up unannounced.

*Mendenhall* does not support Petitioner's position. There the Supreme Court overturned a Sixth Circuit decision that the defendant's consent to search her person was not voluntary and upheld her conviction for possession of heroin with intent to distribute it even though she had not been told that she was free to leave. *Mendenhall* is a Fourth Amendment case and has no holding

pertaining to when a person is in custody for Fifth Amendment purposes.

*Collins v. Virginia* is also a Fourth Amendment case holding police officers could not search a motorcycle parked within the curtilage of of a defendant's home. Like *Mendenhall*, it has no holdings under the Fifth Amendment.

The circumstances of the lawn mower interview did not require *Miranda* warnings. The wearing of firearms, which were here not unholstered, is commonplace among American law enforcement officer and has been for many years. While tactical vests are a more recent standard issue item, they are purely defensive and would not cause a reasonable person to believe he was in custody. Schaaf was not being held at all, much less being held incommunicado, as he suggests. Accordingly, the Magistrate Judge repeats his conclusion in the Report that "a reasonable person [in Schaaf's situation during the lawn mower interview] would not have believed that he was in custody or at least the determination of the Ohio courts to that effect is not an unreasonable determination of the facts in light of the evidence that was before them." (Report, ECF No. 15, PageID 796).

Petitioner second legal objection is to the conclusion of the Twelfth District, found to be reasonable in the Report, that the trial court was not required to suppress Schaaf's lawn mower statement because he had invoked his right to counsel in his earlier voicemail message. The Twelfth District had concluded that "the *Edwards [v. Arizona*, 451 U.S. 477, 482 (1981)] rule applies only if the accused invokes his right to an attorney while in custody." *Schaaf*, 2019-Ohio-196, ¶ 31.

Schaaf asserts this holding is an unreasonable application of Supreme Court precedent in *Massiah v. United States*, 377 U.S. 201 (1964)[2]; *Smith v. Illinois*, 469 U.S. 91 (1984); *Minnick*

---

[2] Schaaf gives the citation as 377 U.S. 218 (1967).

*v. Mississippi*, 498 U.S. 146 (1990); *Rhode Island v. Innis*, 446 U.S. 291 (1981); and *Missouri v. Seibert*, 542 U.S. 600 (2004).

In *Massiah* the Court held that a person formally indicted who had retained counsel, pleaded not guilty, and been released on bail could not have statements later secretly elicited from him by narcotics agents used against him at trial; to do so violated his Sixth Amendment right to counsel. The Twelfth District's decision is not contrary to *Massiah* because, at the time of the questioning, Schaaf had not been indicted or otherwise formally charged. The constitutional right to counsel attaches only upon the initiation of adversary judicial proceedings, such as formal charge, preliminary hearing, indictment, information, or arraignment. *United States v. Gouveia*, 467 U.S. 180 (1984); *Kirby v. Illinois*, 406 U.S. 682 (1972)(no right to counsel in a pre-indictment line-up). The right becomes applicable only when the government's role shifts from investigation to accusation. *Moran v. Burbine*, 475 U.S. 412 (1986).

In *Smith v. Illinois*, the defendant was in custody. During the reading of the *Miranda* warnings, he requested an attorney, but then continued to answer questions. The Supreme Court suppressed the answers to questions asked after the in-custody request for counsel was made. *Smith* is completely consistent that the Twelfth District's determination that Schaaf's voicemail assertion that he wanted an attorney present was not present because it was not made while he was in custody.

*Minnick* involves a variation on *Smith*: after arrest the defendant requested an attorney and was provided access to one. Thereafter, without the attorney present, questioning resumed. The Supreme Court held the results should have been suppressed because the attorney was not present.

In *Innis*, the Supreme Court held that police officers' expressions of concern to an in-custody defendant about who might be injured if the murder weapon were found did not amount

10

to interrogation.

*Seibert* did not produce a majority opinion. In that case, the defendant was taken into custody and transported to the police station for questioning. The police began the questioning without *Miranda* warnings, gave the warnings part-way through, then sought to introduce both the before and after statements. The facts here are different. Officers began the lawn mower interview without taking Schaaf into custody. They arrested him only after he admitted that he had had a physical altercation with his deceased son and had struck him several times with a hatchet. *Schaaf*, 2019-Ohio-196, ¶ 7. At that point he was in custody and was given *Miranda* warnings, whereupon he signed a *Miranda* waiver. *Id.* at 8. Thus Schaaf's post-waiver statements were not the product of continuous in-custody interrogation.

Petitioner's third legal error objection is that the Report "does not comment on the voluntariness or admissibility of Schaaf's statements that he motioned [sic] to suppress." (Objections, ECF No. 18, PageID 817). Schaaf makes no argument that his statements were involuntary and therefore inadmissible other than those already discussed. For example, he does not assert that he was physically threatened. Thus there is no need for a separate "voluntariness" analysis.

Petitioner's fourth legal error objection is "[n]either Magistrate Judge, nor Ohio appellate court addresses Schaaf's 'fruit of the poisonous tree argument.'" Because admission of Schaaf's lawn mower interview was lawful, admission of his post-waiver statements was not the "fruit of a poisonous tree."

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

November 19, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.